UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 17-23988-CIV-KING/SIMONTON

MARITZA RIASCOS-MAZO, Individually and as assignee
of Blue Reef Watersports Center, LLC, and
Carnival Corporation d/b/a Carnival Cruise Lines,

    Plaintiff,
v.

CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON
subscribing to Certificate No. SA 01329-R4-14581, and
FIRST FLIGHT INSURANCE GROUP, INC., a North
Carolina corporation,

    Defendants.
_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT UNDERWRITERS' MOTION TO DISMISS OR ABATE COUNT II
## AND
## ORDER DENYING MOTION TO STRIKE CERTAIN ALLEGATIONS IN COUNT I[1]

This matter is before the Court pursuant to Defendant Underwriters' Motion to Dismiss or Abate Count II and Motion to Strike Certain Allegations in Count I of Plaintiff's Complaint for Damages and Demand for Jury Trial, ECF No. [14] (the "Motion"). The Motion has been fully briefed, ECF Nos. [15], [17]. The Honorable James Lawrence King, United States District Judge, has referred the matter to the undersigned Magistrate Judge to take all necessary and proper action as required by law, ECF No. [19]. For the reasons stated herein, it is **RECOMMENDED** that Defendant Underwriters' Motion to Dismiss or Abate Count II be **GRANTED**; and Defendant Underwriters' Motion to Strike Certain Allegations in Count I of Plaintiff's Complaint is **DENIED**.

---

[1] To the extent that the Motion seeks dismissal, it is a dispositive matter as to which the undersigned magistrate judge must enter a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B). To the extent that the Motion seeks to strike allegations in the Complaint, it is a non-dispositive matter as which entry of an Order is appropriate. 28 U.S.C. § 636(b)(1)(A).

I.   **<u>Background</u>**

This case arises from an insurance coverage dispute related to alleged injuries suffered by the Plaintiff while on a shore excursion during the course of a cruise with Carnival Corporation ("Carnival"), ECF No. [1] at ¶¶ 1, 11.  An action for damages related to those injuries was filed in this District on October 22, 2015:  *Maritza Riascos-Mazo vs. Carnival Corporation, a Panamanian corporation d/b/a Carnival Cruise Lines, and Blue Reef Watersports Center, LLC, a Florida limited liability company*, No. 15-cv-23970-JAL (the "Underlying Tort Action"), ECF No. [1] at ¶ 12.  The allegations therein included that a watersports company known as Blue Reef, which had entered into a Tour Operator Agreement with Carnival for Blue Reef to provide parasail shore excursions for Carnival passengers in St. Thomas, U.S. Virgin Islands, negligently operated the vessel in which the Plaintiff was a passenger, resulting in the Plaintiff being slammed into the vessel gunwale and suffering severe, grievous, and debilitating injuries (the "Incident"), ECF No. [1] at ¶ 13.  The allegations in that action additionally included that Carnival was negligent in its selection and procurement of a responsible parasail shore excursion operator, ECF No. [1] at ¶ 14.  The Tour Operator Agreement required Blue Reef to maintain insurance coverage which Blue Reef attempted to procure through the Defendants herein, ECF No. [1] at ¶ 10.

Blue Reef initially applied for insurance coverage for its watersports operations with Defendant Underwriters in 2014, and was issued a policy that provided Blue Reef with Commercial General Liability Coverage for bodily injury in the amount of $1,000,000.00 and an increased liability limit for claims involving Carnival, as an additional insured, in the amount of $5,000,000.00 (the "Policy"), ECF No. [1] at 17.  The Plaintiff alleges, upon information and belief, that the *High Hopes*, the vessel upon which the Incident occurred, was added to the Policy under an endorsement of December 18, 2014, ECF No. [1] at ¶ 18.

On February 19, 2015, Blue Reef applied for renewal of the existing policy through Defendant First Flight, ECF No. [1] at ¶ 20. According to the Complaint, Defendant First Flight was the insurance broker representing Blue Reef and Carnival, ECF No. [1] at ¶¶ 6, 49. The renewal application identified the High Hopes and the parasail operation in St. Thomas, Virgin Islands and included Carnival as an additional insured, ECF No. [1] at ¶ 20. On March 23, 2015, at approximately 4:45 p.m., the incident in which the Plaintiff was injured while parasailing aboard the High Hopes occurred, ECF No. [1] at ¶¶ 11, 24. On March 24, 2015, Defendant Underwriters, through Defendant First Flight, issued a renewal (the "Renewal Policy") which did not include the High Hopes as a covered vessel and with coverage thereunder backdated to commence on March 23, 2015, at 12:01 AM, ECF No. [1] at ¶¶ 21,[2] 24. At no time between the addition of the High Hopes to the endorsement on December 18, 2014, and the issuance of the renewal policy was the High Hopes excluded or removed from coverage by Defendant Underwriters, ECF No. [1] at ¶ 19. Upon information and belief, neither of the Defendants notified Blue Reef or Carnival that the High Hopes would be deleted from the renewal policy, nor did either issue a notice of deletion or cancellation informing Blue Reef or Carnival that the High Hopes would be deleted from the new policy, ECF No. [1] at ¶ 23.

In the Underlying Tort Action, Defendant Underwriters initially provided a defense, but subsequently withdrew and refused to either defend or indemnify its insureds, denying coverage on the sole basis that the alleged incident did not occur on a scheduled watercraft under the Renewal Policy, ECF No. [1] at ¶ 15-16. Based on the exclusion of the High Hopes from the renewal policy, the Defendants maintained that the Plaintiff's Incident was not a covered event, ECF No. [1] at ¶ 25.

---

[2] The Renewal Policy was titled "Commercial General Liability Insurance Policy" and Plaintiff attached a purported copy to the Complaint as Exhibit D, ECF No. [1] at 21; ECF No. [1] at Exhibit D. Defendant Underwriters denies that Exhibit D to the Complaint is a true, complete, and correct copy of the Renewal Policy and has attached a certified copy to its Answer and Affirmative Defenses, ECF No. [13] at 21; ECF No. [13] at Exhibit A.

Carnival defended the Underlying Tort Action as to itself only and entered into a confidential settlement with the Plaintiff, in which Carnival assigned all of its rights as an additional insured under the Renewal Policy to the Plaintiff, ECF No. [1] at ¶ 26. Blue Reef also defended the Underlying Tort Action as to itself and entered into a *Coblentz* Agreement and Assignment with the Plaintiff, ECF No. [1] at ¶ [27]. That agreement required Blue Reef to assign its rights as an insured under the Renewal Policy to the Plaintiff, ECF No. [1] at Exhibit F, and additionally required the parties to submit the claim to a neutral arbiter to obtain an advisory opinion as to the value of the Plaintiff's claim, ECF No. [1] at ¶ [27]. Upon consideration of the documentation submitted by the parties, the arbiter valued the Plaintiff's claim at $8,167,946.14, ECF No. [1] at ¶ [27]. Blue Reef and Plaintiff agreed to entry of a consent judgment in favor of the Plaintiff in the amount of $5,717,562.30, ECF No. [1] at ¶ 28.

The Plaintiff has filed the instant action as an assignee of both Blue Reef and Carnival, ECF No. [1] at ¶ 29. The Plaintiff has brought claims against Defendant Certain Underwriters for Breach of Contract and Breach of Fiduciary Duty, ECF No. [1] at ¶ 30-42. The Plaintiff seeks to have the *Coblentz* Agreement entered into with Blue Reef enforced and seeks judgment of $5,717,562.30 in accordance with the *Coblentz* agreement in addition to other damages, including medical payment benefits due under the policy, costs, interest and attorney's fees as allowable by law, ECF No. [1] at ¶ 30-42; Wherefore clause following ¶¶ 38, 42. The Plaintiff has also brought a claim against Defendant First Flight for Negligent Procurement of Coverage, by which the Plaintiff seeks damages, including the expenses and attorney's fees incurred by the Plaintiff, Blue Reef, and Carnival in litigating the Underlying Tort Action, as well as payment of the Consent Judgement entered against Blue Reef in the Underlying Tort Action in the amount of $5,717,562.30, together with attorney's fees, costs, and prejudgment and post-judgment interest, ECF No. [1] at ¶ 43-52 (as to First Flight); Wherefore clause following ¶ 52.

II. **Analysis**[3]

A. **Defendant's Motion to Dismiss or Abate Count II**

Defendant Underwriters moves for dismissal of Count II of the Complaint on the basis that it is a premature bad faith claim and should be dismissed or abated pending determination of the coverage issues. The Plaintiff responds that the legal standard for dismissal of a claim pursuant to Rule 12(b)(6) is identical to the standard for judgment on the pleadings pursuant to Rule 12(c) and that Defendant Underwriters' motion should be denied as premature, ECF No. [15].[4]

1. **Standard of Review**

In order to state a claim for relief, Federal Rule of Civil Procedure Rule 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, the Court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, "a court's duty to liberally construe a plaintiff's

---

[3] Although this case is brought under the admiralty jurisdiction of this Court, in addition to diversity jurisdiction, the parties have relied solely on Florida law. Since state law is permitted to fill the gaps where there is no controlling federal common law, and the parties have not presented any contrary federal common law, the undersigned has also analyzed these issues under Florida law. *See generally All Underwriters v. Weisberg*, 222 F.3d 1309, 1312 (11th Cir. 2000); *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 321 (1955).

[4] In her Opposition to Defendant Underwriters' Motion to Dismiss, the Plaintiff relies on *John J. Enterprise, Inc. v. Scottsdale Insurance Company*, No. 1:17-cv-22268, 2017 WL 5644601-JLK (S.D. Fla. Sept. 22, 2017), and argues that Defendant Underwriters' Motion to Dismiss should be denied as premature. The Plaintiff's precise argument based on *Enterprise* is unclear, but presumably the Plaintiff is asserting that it would be premature to dismiss her Count II claim for Breach of Fiduciary Duty claim without allowing for further development of the record. *Enterprise* is inapposite, however, as the Defendant moved for judgment on the pleadings and the Court denied its motion on the basis that issues of material fact existed within the record as to the cause of the damage therein that precluded such relief. Defendant Underwriters' argument for dismissal or abatement of Count II herein is that Florida law requires dismissal or abatement of bad faith claims prior to the determination of coverage and thus the insurer's liability; no further development of the record is required to address this purely legal question.

complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for [him]." *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id*.

When ruling on a 12(b)(6) motion to dismiss, the court may only consider the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which a court may take judicial notice. *Hodge v. Orlando Utilities Comm'n*, No. 6:09–cv–1059–Orl–19DAB, 2009 WL 4042930, at *3 (M.D. Fla. Nov. 23, 2009) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 323 (2007)); *GSW, Inc. v. Long Cnty., Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The factual allegations in the complaint must be taken as true and read in the light most favorable to the plaintiff. *Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 912 (11th Cir. 1993) (citation omitted); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

2. <u>Plaintiff's Bad Faith Claim Is Premature</u>

Pursuant to Florida law, a bad-faith claim requires a determination of both the insurer's liability and the insured's damages*. Vest v. Travelers Ins. Co.*, 753 So. 2d 1270, 1276 (Fla. 2000) (citing *Blanchard v. State Farm Mut. Auto. Ins. Co.*, 575 So. 2d 1289 (Fla. 1991)). State and federal courts in Florida routinely hold that the absence of a

6

determination of the insurer's liability and the insured's damages renders a bad-faith claim "premature" and consequently requires dismissal. *Vest*, 753 So. 2d at 1276; *Bele v. 21st Century Centennial Ins. Co.*, 126 F. Supp. 3d 1293, 1297 (M.D. Fla. 2015) (collecting decisions). "Where causes of action for both the underlying damages and bad faith are brought in the same action, the appropriate step is to abate the bad faith action until coverage and damages have been determined." *State Farm Mut. Auto. Ins. Co. v. Tranchese,* 49 So. 3d 809, 810 (Fla. Dist. Ct. App. 2010).

Thus, to the extent that the Plaintiff's Count II claim for breach of fiduciary duty is properly characterized as a cause of action for bad faith, it is premature until there has been a determination of coverage under the Renewal Policy, and thereby of the insurer's liability. *State Farm Mut. Auto. Insurance Co. v. Tranchese*, 49 So.3d 809 (Fla. 4th DCA 2010). Although the Underlying Tort Action determined the insured's liability and the amount of damages, there has yet been no determination of whether coverage for the Incident existed under the Renewal Policy so as to resolve the insurer's liability.

> "Indeed, the mere entry of a consent judgment does not establish coverage and an insurer's unjustifiable failure to defend the underlying action does not estop the insurer from raising coverage issues in a subsequent suit to satisfy a consent judgment entered pursuant to a *Coblentz* agreement." *Sinni,* 676 F. Supp. 2d at 1324 (citation omitted). What the consent judgment does do, however, is bar the insurer from "rais[ing] any defense to the plaintiff's claim ... that should have been raised in the underlying action." *Wrangen v. Pa. Lumbermans Mut. Ins. Co.,* 593 F. Supp. 2d 1273, 1278 (S.D.Fla.2008) (citing *Gallagher v. Dupont,* 918 So. 2d 342, 347 (Fla. 5th DCA 2005); *Independent Fire Ins. Co. v. Paulekas,* 633 So. 2d 1111, 1114 (Fla. 3d DCA 1994)). The notion is that the settlement establishes the *insured*'s liability, but not the insurer's obligation of coverage. *See Ahern v. Odyssey Re (London) Ltd.,* 788 So.2d 369, 372 (Fla. 4th DCA 2001); *see also Columbia Cas. Co. v. Hare,* 116 Fla. 29, 156 So. 370, 374 (1934).

*Mid-Continent Cas. Co. v. Royal Crane, LLC,* 169 So. 3d 174, 181-82 (Fla. Dist. Ct. App. 2015).

In *State Farm Mut. Auto. Ins. Co. v. Laforet*, the Supreme Court of Florida provided a useful history of the evolution of the bad faith action within the insurance context and

how the bad faith action is intertwined with the insurer's fiduciary duty. The Court stated, in pertinent part:

> Until this century, actions for breaches of insurance contracts were treated the same as any other breach of contract action and damages were generally limited to those contemplated by the parties at the time they entered into the contract. Roger C. Henderson, *The Tort of Bad Faith in First–Party Insurance Transactions: Refining the Standard of Culpability and Reformulating the Remedies by Statute,* 26 U. Mich. J. L. Ref. 1 (Fall 1992). Eventually, however, insurance contracts began to be seen as distinguishable from other types of contracts because they came to "occupy a unique institutional role" in modern society and affected a large number of people whose rates were dependent upon the acts of not only themselves but also of other insureds. *Id.* at 8. This became especially true when liability policies began to replace traditional indemnity policies as the standard insurance policy form. Under indemnity policies, the insured defended the claim and the insurance company simply paid a claim against the insured after the claim was concluded. Under liability policies, however, insurance companies took on the obligation of defending the insured, which, in turn, made insureds dependent on the acts of the insurers; insurers had the power to settle and foreclose an insured's exposure or to refuse to settle and leave the insured exposed to liability in excess of policy limits. *Id.* at 19–22. This placed insurers in a fiduciary relationship with their insureds similar to that which exists between an attorney and client. *Baxter v. Royal Indem. Co.,* 285 So.2d 652 (Fla. 1st DCA 1973), *cert. discharged,* 317 So.2d 725 (Fla.1975). Consequently, courts began to recognize that insurers "owed a duty to their insureds to refrain from acting solely on the basis of their own interests in settlement." Henderson, *supra,* 26 U. Mich. J. L. Ref. at 21. This duty became known as the "exercise of good faith" or the "avoidance of bad faith." *Id.* at 22. Under this new standard of culpability, if an insurer was found to have acted in bad faith, the insurer would have to pay the entire judgment entered against the insured in favor of the injured third party, including any amount in excess of the insured's policy limits. This type of claim became known as a third-party bad faith action. *Id.*

658 So. 2d 55, 58 (Fla. 1995).

As a result of this history, both Florida courts and federal district courts applying Florida law have held that the bad faith claim against insurers encompasses other claims related to the relationship between the insurer and the insured. *Lemoine v. GEICO Indem. Co.*, No. 14-80694-CIV, 2016 WL 4240044, at *3 (S.D. Fla. Feb. 18, 2016). In *Lemoine*, the district court compared several cases that considered the specific issue of whether a breach of fiduciary duty claim can exist independent of a bad faith claim and

reached varying conclusions.  *Id*. at *3.  In *Government Employees Ins. Co. v. Prushansky*, the court concluded that because "Florida courts have historically recognized that third-party insurance claims for bad faith stemmed from the fiduciary relationship between the insurer and the insured....the Court also finds that the breach of fiduciary duty claim is subsumed into the claim for bad faith." No. 12-80556-CIV, 2012 WL 6103220, at *3 (S.D. Fla. Dec. 7, 2012).  The court in *Padilla v. Travelers Home and Marine Ins. Co.* also concluded that the breach of fiduciary duty claim was subject to dismissal, but for different reasons than those stated by the *Prushansky* court.  No. 6:14-cv-1779-orl-28KRS, 2015 WL 3454308, *3 (M.D. Fla. May 29, 2015).  Therein, the court determined that because "the standard that must be met in order to establish a breach of [the duty owed by the insurer to the insured]" is "bad faith and nothing less," the plaintiff's breach of fiduciary duty claim was duplicative of their bad faith claim.  *Id*. at *4.  On the other hand, in *Merrett v. Liberty Mutual Insurance Co.*, the court concluded that "the elements of the causes of action of bad faith and breach of fiduciary duty are different," and, though acknowledging that the "factual bases are similar," declined to dismiss the breach of fiduciary duty claim as duplicative of bad faith claim.  No. 3:10-cv-1195-J-12MCR, 2012 WL 1481511, *4 (M.D. Fla. Apr. 27, 2012).

In *Lemoine*, which was before the court upon the parties' motions for summary judgment, the district court, after consideration of the cases discussed above, noted that it found "the position of the courts that have viewed the bad faith claim as a comprehensive claim, including all aspects of the fiduciary relationship, to be more persuasive." 2016 WL 4240044 at *4.  The undersigned agrees with this analysis, and finds that the Plaintiff's breach of fiduciary duty claim is, in essence, a bad faith claim.

Thus, because the Plaintiff's claim for breach of fiduciary duty is properly characterized as a bad faith claim, it "is premature until there is a determination of liability and extent of damages owed on the first-party insurance contract." *State Farm*

9

*Mut. Auto. Ins. Co. v. Horkheimer,* 814 So.2d 1069, 1073 (Fla. Dist. Ct. App. 2002). As previously stated, though the insured's liability and damages have been established, a determination of coverage is still necessary before a bad faith claim becomes ripe.

The fact that the Plaintiff seeks to enforce a *Coblentz* agreement does not alter this analysis; in fact, enforcement of a *Coblentz* agreement above the relevant policy limits, such as the Plaintiff seeks herein, is also a two-part inquiry in which the bad faith determination occurs separate from and subsequent to the other required determinations.

A *Coblentz* agreement is a negotiated final consent judgment entered against an insured which was not defended by the insurer. *Wrangen v. Penn. Lumbermans Mut. Ins. Co.,* 593 F. Supp. 2d. 1273, 1278 (S.D. Fla. 2008). Generally, under a *Coblentz* Agreement, an insured defendant "enter[s] into a settlement that assigns to the plaintiff the insured's rights against the insurer in exchange for a release from personal liability." *See Perera v. U.S., Fidelity and Guar. Co.,* 35 So. 3d 893, 903 (Fla. 2010). In order to enforce a *Coblentz* agreement against the insurer, a party must prove three things: (1) that the "damages are covered by the policy; (2) the insurer wrongfully refused to defend; and (3) the settlement is reasonable and made in good faith." *Id.*

A *Coblentz* agreement in excess of the insured's policy limits, however, can only be enforced where the insurer "wrongfully refuses to defend and acts in bad faith." *Perera v. U.S., Fidelity and Guar. Co.,* 35 So.3d 893, 900 (Fla.2010); *see also Shook,* 498 So.2d at 498–499. "A claim for bad faith ... is founded upon the obligation of the insurer to pay when all conditions under the policy would require an insurer exercising good faith and fair dealing towards its insured to pay." *Vest v. Travelers Ins. Co.* 753 So.2d 1270, 1275 (Fla.2000). "Absent a showing of bad faith, a judgment cannot be entered against an insurer in excess of its policy limits." *State Farm Mut. Auto. Ins. Co. v. Horkheimer,* 814 So. 2d at 1072.

Thus, the court in *Merique v. Progressive Select Insurance Company* noted that:

> a *Coblentz* agreement generates three actions. First, the injured third party sues the insured. After the insurer refuses to defend the insured, the insured settles with the third party. This settlement, which often results in a consent judgment, establishes the insured's damages. In consideration for the third party's agreeing not to attempt execution on the judgment, the insured assigns to the third party the insured's breach-of-insurance-policy claim, the insured's bad-faith claim, or both. Second, the third party sues the insurer and requests a declaratory judgment that the insurance policy covers the claim in the first action. Of course, the insurer is indispensable to, and necessarily knows about, this action. If successful, the declaratory-judgment action establishes the insurer's liability. Third, the third party sues the insurer for bad faith and cites the *Coblentz* agreement and the action that establishes the insurer's liability.

No. 8:17-CV-1937-T-23JSS, 2017 WL 4410186, at *1, n.2 (M.D. Fla. Oct. 4, 2017) (dismissing claim premised on bad faith and seeking to enforce *Coblentz* agreement because "an allegation of bad-faith ripens into a justiciable action only after a determination of [the insurer's] liability"). Similarly, in *Mobley v. Capitol Specialty Ins.*, the court stated that "[u]nder Florida law, for a *Coblentz* Agreement to be enforced against an insurer above its policy limits, the proceedings must have two distinct phases: (1) a determination that the *Coblentz* Agreement is enforceable, and (2) a determination that the Defendant insurer acted in bad faith. As discussed, in order for a Court to determine a *Coblentz* Agreement is enforceable, it must first determine that "damages are covered by the policy; (2) the insurer wrongfully refused to defend; and (3) the settlement is reasonable and made in good faith." No. 13-cv-20636, 2013 WL 3794058, at *3 (S.D. Fla. July 19, 2013).

Plaintiff's claim for breach of contract seeks to have the court determine whether there was coverage under the policy for the Plaintiff's Incident, and whether Defendant Underwriters breached its duty to its insureds when it, among other alleged breaches, failed to provide a defense to Blue Reef and Carnival. These are necessary determinations prior to enforcement of a *Coblentz* agreement. To the extent that the

**Plaintiff seeks to have the *Coblentz* agreement enforced above the relevant policy limits, a separate proceeding to establish bad faith is required for that purpose.**

**Thus, the Plaintiff's allegations of bad faith are properly stayed or abated from this action. *See Blumberg v. USAA Cas. Ins. Co.,* 790 So. 2d 1061, 1065 n.2 (Fla. 2001) (finding proper remedy for premature litigation is an abatement or stay of the claim for the period necessary for its maturation under the law). In the interest of judicial efficiency, the undersigned recommends that the Plaintiff's breach of fiduciary duty claim against Defendant Underwriters be stayed pending a determination of coverage in the breach of contract action.**

### B. Defendant's Motion to Strike Certain Allegations in Count I

#### 1. Standard of Review

**Under Federal Rule of Civil Procedure 12(f), "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, motions to strike are drastic remedies, and are disfavored by the courts. *Montoya v. L.C. 1 Trucking Corp.,* 2013 WL 588322, *1 (S.D.Fla. February 13, 2013) (Seltzer, J.). "The purpose of a Motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters. It is not intended to procure the dismissal of all or part of a complaint." *Schmidt v. Life Ins. Co. of North Am.,* 289 F.R.D. 357 (M.D.Fla.2012). Accordingly, "motions to strike are usually denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Montoya,* 2013 WL 588322, *1 (internal quotations omitted).**

#### 2. Plaintiff's Allegations Related to Carnival

**Defendant moves to strike certain allegations in Count I of the Complaint as premature, improper, and/or unduly prejudicial, ECF No. [14] at 12-17. Specifically,**

Defendant moves to strike allegations pertaining to Carnival because the *Coblentz* agreement, which the Plaintiff seeks to enforce as part of its damages, pertains only to Blue Reef, and thus the allegations pertaining to Carnival, which include that Carnival had a $5,000,000.00 limit of liability under the Renewal Policy, are irrelevant, confusing, and prejudicial. Defendant seeks to have allegations "pertaining to coverage afforded to Carnival and the purported assignment between Plaintiff and Carnival" stricken, as well as the reference to and copy of Carnival's assignment of rights to the Plaintiff, ECF No. [14] at 15.

In support of its Motion to Strike, Defendant Underwriters cites to case law regarding the enforcement of *Coblentz* agreements, such as that between the Plaintiff and Blue Reef, and the requirement of a finding of bad faith before a *Coblentz* agreement is enforceable in an amount in excess of the insured's policy limits. The Plaintiff is correct that unless and until there is a finding of bad faith as to the handling of Blue Reef's claim, enforcement of the *Coblentz* agreement above Blue Reef's $1,000,000.00 policy limit is not available. But that does not render reference to Carnival's separate policy limit of $5,000,000.00 and the fact that Carnival has assigned its claims to the Plaintiff, standing alone, irrelevant to the Plaintiff's breach of contract claim. *See, e.g.*, *Agan v. Katzman & Korr, P.A.*, 328 F. Supp. 2d 1363, 1367 (S.D. Fla. 2004) ("Motions to strike are usually denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." (citations omitted)). The Plaintiff has plead a breach of contract claim on the basis of Defendant Underwriters' failure to defend or indemnify Carnival and Blue Reef in the Underlying Tort Action, and Carnival's assignment of its claims to the Plaintiff and Carnival's limit of liability under the Policy are relevant—the assignment is, in fact, necessary—to those claims.[5]

---

[5] The undersigned notes that the Complaint is somewhat unclear regarding whether the Plaintiff is seeking relief solely under the *Coblentz* agreement or also pursuant to its

**Defendant Underwriters' argument that the inclusion of these accurate and relevant facts may cause confusion is not a basis for striking them from the Complaint. To the extent there is any confusion surrounding Carnival's assignment of its claims, Defendant Underwriters will have the opportunity to explore and resolve that confusion through discovery.**

### 3. Plaintiff's Allegations Related to Bad Faith

**Defendant Underwriters also moves to strike Paragraphs 34 and 35 from Count I of the Complaint, on the basis that these allegations are the same or similar to those within the breach of fiduciary duty claim, and thus are (1) redundant; and (2) premature allegations of bad faith until coverage under the relevant insurance policy is determined. In response, the Plaintiff argues that a motion to strike a pleading "is a drastic remedy to be resorted to only when required for the purposes of justice," and that Defendant Underwriters has failed to meet the high standard for striking a pleading with regard to any particular word, recitation, or allegation, ECF No. [15] at 3, quoting *Augustus v. Bd. of Public Instruction of Escambia County,* 306 F. 2d 862, 868 (5th Cir. 1962)[6]. The Plaintiff additionally argues that there are no bad faith allegations in Count I, and that the mention of the insurer's "good faith duty" occurs within the context of a breach of contract count. As the undersigned has already determined that the breach of fiduciary claim is premature and must be stayed, *see* Section II.A.2. *supra*, the Defendant's argument that**

---

settlement agreement with Carnival. The Plaintiff's cursory response to the Motion did not clarify this. Defendant Underwriters did not seek a more definite statement of Plaintiff's Complaint, however, and a liberal reading of the Complaint supports the view that the Plaintiff is seeking relief based on the determination of damages as contained in the Settlement Agreement with Carnival, as well as the *Coblentz* Agreement. In this regard, the undersigned notes that Defendant Underwriters did not seek to dismiss the Plaintiff's claims to the extent they were based on an assignment from Carnival; rather, it sought to strike the mention of Carnival's assignment from the Complaint.

[6] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit accepted as binding precedent all Fifth Circuit cases decided before October 1, 1981.

the allegations of Paragraphs 34 and 35 are redundant is rendered moot.

With respect to the purportedly premature nature of these allegations, Defendant Underwriters argues that Plaintiff appears to have conflated the requirement that a Plaintiff seeking enforcement of a *Coblentz* agreement establish "wrongful refusal to defend," with the subsequent requirement of a determination of bad faith to allow enforcement of a *Coblentz* agreement above the relevant policy limits, ECF No. [14] at 17. Contrary to Defendant Underwriters' argument, however, Paragraphs 34 and 35 seek to establish that Defendant Underwriters wrongfully refused to defend Blue Reef and Carnival, in breach of the duty of good faith owed to its insureds. These allegations are properly included within the Plaintiff's claim for breach of contract. The use of the phrase "good faith" does not automatically render the claim a premature bad faith claim. Like the defendant in *Mobley*, Defendant Underwriters "is attempting to split what should be a two-part process into three or more parts." *Mobley v. Capitol Specialty Ins.*, No. 13-cv-20636, 2013 WL 3794058, at *3 (S.D. Fla. July 19, 2013).

III. <u>Conclusion</u>

Therefore, in accordance with the above, it is hereby

**RECOMMENDED** that Defendant Underwriters' Motion to Dismiss or Abate Count II, ECF No. [14], be **GRANTED**, and that Count II of the Complaint be stayed pending a determination of coverage under the relevant policy. It is further

**ORDERED AND ADJUDGED** that Defendant Underwriters' Motion to Strike Certain Allegations in Count I of Plaintiff's Complaint for Damages is **DENIED**.

The parties will have until September 17, 2018, to file written objections for consideration by the United States District Judge to whom this case is assigned. Any response to objections must be filed within seven days from the date any objections are

filed. Any request for an extension of these deadlines must be made within seven calendar days from the date of this Report and Recommendation. Pursuant to Eleventh Circuit Rule 3-1, and accompanying Internal Operating Procedure 3, the parties are hereby notified that failure to object in accordance with 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.

        **DONE AND SUBMITTED** in chambers in Miami, Florida, on September 5, 2018.

        */s/ Andrea M. Simonton*
        _____
        **ANDREA M. SIMONTON**
        **CHIEF UNITED STATES MAGISTRATE JUDGE**

**Copies furnished via CM/ECF to:**
The Honorable James Lawrence King, United States District Judge
All counsel of record